[No. 9910.   Department One.   February 16, 1912.]

THE CITY OF SPOKANE, *Respondent*, v. A. A. KRAFT *et al.,*
*Appellants.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—
EXCESSIVE AND ARBITRARY APPORTIONMENT—ABUSE OF DISCRETION—
REVIEW BY COURTS.   While the courts will be slow to interfere with
the discretion of eminent domain commissioners in fixing the limits
of a special assessment district, yet an assessment will be set aside
as arbitrary and an abuse of discretion, where one block was assessed for three times the depth of the block on the opposite side of
the street, and twice the depth of other blocks on the same side of
the street, in amounts proportionally greater, apparently merely because it was all owned by one person, and without any possible suggestion that, from its situation or the lay of the land, it would receive any greater benefit from the improvement.

SAME—REVIEW—DECISION—REMAND—NEW ASSESSMENT.   Upon reversing on appeal the confirmation of an assessment for a local improvement on the ground that one block was arbitrarily assessed
an excessive amount, an entirely new assessment will be ordered,
inasmuch as the amount to be deducted from the property in
question could not be assessed to other owners without a new notice
of the increase.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered December 28, 1909, upon findings in favor of the plaintiff, upon confirming assessments for street improvements.   Reversed.

*Post, Avery & Higgins*, for appellants.

*A. M. Craven* and *Bruce Blake*, for respondent.

PARKER, J.—Eminent domain commissioners of the city of Spokane levied assessments upon land and lots of A. A.

[1]Reported in 121 Pac. 830.

Kraft and wife, together with lots of other owners, to pay for land condemned by the city for extending First avenue and Sheridan street through an irregular tract of unplatted land surrounded by platted land within the city. There were two eminent domain proceedings, and two separate assessment rolls made, one relating to First avenue and one to Sheridan street. Kraft and wife objected to the assessment made against their property upon each roll. These objections were heard by the court, and evidence received relative thereto when the rolls were before the superior court for confirmation, and thereupon the court confirmed each roll as returned by the eminent domain commissioners, with very slight modifications. Kraft and wife have appealed from the judgments of confirmation. While there are two separate assessment proceedings involved in these appeals, and each must be determined by us upon its own merits, they are submitted here together, and involve facts some of which are common to both. Before discussing the assessments separately, we will notice these facts.

We may at the outset remark that the modifications of the assessments, made by the superior court upon confirmation, were so slight that we will regard such modifications of no consequence in determining these appeals. First avenue runs east and west, while Sheridan street runs north and south. These two eminent domain proceedings result in the avenue and street intersecting each other. The irregular tract of land through which the avenue and street are being extended lies at the intersection, and occupies a considerable portion of what would be three of the platted blocks cornering upon the intersection, if platted in conformity with the surrounding blocks and streets, and also occupies portions of the avenue and street extending a distance of from 200 to 300 feet east, west, and south from the intersection. This irregular tract is approximately three acres in extent, and has heretofore been known as Hawkeye Lake. It is a shallow depression in the ground containing water, and was left un-

platted at the time of the platting of the surrounding land. The accompanying plat shows approximately the situation, and will render our discussion more readily intelligible.

The assessment district charged with the expense of extending First avenue through this irregular tract, includes the south half of blocks 2, 3, and 4, on the north side of First avenue, the north half of blocks 9 and 11, and all of block 10 on the south side of First avenue. Appellants are the owners of all of the fractional lots in block 10 fronting upon Pacific avenue, and all of the unplatted portion of block 10. It will thus be noticed that the assessment district extends north of First avenue one-half block, and extends south of First avenue so as to include the whole of block 10, but not the whole of blocks 9 and 11. In block 10, the district extends away from First avenue practically three times as far as it does in block 3 opposite. It also appears from the record that block 10 has charged against it an amount several times greater than is charged against the south half of block 3 opposite. Pacific avenue, which already furnishes an improved thoroughfare along the south front of block 10, suggests that there is no reason for assessing the south one-half of block 10 for the improvement of First avenue any more than

there would be for assessing any of the other half blocks situated equally distant from First avenue on the north or south. It is not contended that there is anything in the lay of the land which would suggest this discrimination.   If the north half of block 3 or 4 does not receive any benefit from this extension of First avenue, it seems impossible to conceive how the south half of block 10 could receive such a benefit; indeed, the north half of blocks 3 and 4 are nearer to First avenue and the proposed improvement than the south half of block 10.   This occurs by reason of the greater depth of block 10.   It is apparent that, whatever reason there be for assessing to the middle of the blocks, on the north side of First avenue, would limit the assessment to the middle of the blocks on the south side of First avenue.   The mere fact that all of block 10, including its unplatted portion, belongs to one owner within itself furnishes no reason for assessing it all as in this instance.   It seems, however, from an examination of the evidence, that that fact largely influenced the commissioners in the making of the assessment in this manner. Appellants insist that the assessment of block 10 is so apparently without reference to the proportionate benefits resulting thereto as to call for reversal of the judgment of confirmation and a setting aside of the assessment.   This challenges the discretion of the commissioners in fixing the boundaries of the assessment district, as well as in fixing the amount of the assessment against block 10; a discretion which, of course, we would be slow to interfere with.   *In re Westlake Avenue,* 40 Wash. 144, 82 Pac. 279; *In re Third, Fourth and Fifth Avenues,* 55 Wash. 519, 104 Pac. 799.

We think, nevertheless, that the boundaries of this district have been thus fixed so arbitrarily without reference to the rights of the property owners as to amount to such an abuse of discretion on the part of the commissioners, and calls for a setting aside of the assessment and reversal of the judgment confirming it.   These remarks also apply to the unequal apportioning of the assessment by the excessive charge against

block 10 as compared with the other blocks. We would not be inclined to disturb the assessment merely on account of the inclusion of the south one-half of block 10 in the assessment if it appeared that the entire assessment upon block 10 was no greater than ought to be charged against the north one-half thereof, since that would not work an injustice to the owner of block 10, though upon demand they would probably be entitled to have the lien confined to the north half in view of the manner of assessing other blocks.

The assessment for the extension of Sheridan street through this unplatted land is in substantially the same condition as the assessment for the extension of First avenue, and the same contention is made against it by appellants. This assessment district includes the east half of blocks 4 and 9, the west one-half of block 3, and all of block 10 which is owned by appellants. As in the other assessment, block 10 is charged with an amount several times as great as is charged against the east one-half of block 9 opposite, and it will also be noticed that the east half of block 10 is assessed while the west one-half of block 9 is not. That is, the assessment district extends twice as far from Sheridan street, in block 10, as it does in any other part of the district. This we think was an arbitrary fixing of the assessment against block 10 and the boundaries of the district, amounting to an abuse of discretion for the same reason we have given relative to the other district. We conclude that the judgment confirming this assessment should be reversed, and the assessment set aside.

We are led to this conclusion concerning both assessments because there is necessarily involved here something more than the reducing of appellants' assessments. Unless the condemnation be abandoned, whatever is deducted from appellants' assessments must necessarily be charged against other benefited property or against the city, and other property cannot be assessed except by making new assessment rolls, after giving new notice to property owners, since other

property owners have had no notice that their assessments might be increased above that shown upon the original rolls. *In re Sixth Avenue West*, 59 Wash. 41, 109 Pac. 1052.

We have been careful to refrain from expressing an opinion as to just what the boundaries of the district should be, or what the amount of the assessment against appellants' property should be. What we have said only has reference to the comparative distances the boundaries of the districts have been placed from the streets being extended and the amount of appellants' assessments as compared with others. It may be that the boundaries of these districts should extend even farther away from these streets than the farthest boundary fixed by the commissioners in these instances. We are only holding that, in the fixing of such boundaries, there must not be unreasonable discrimination in favor of or against any particular property or the owners thereof. The fixing of the amount of the assessments must be governed by the same principle. We are not attempting to lay down any hard and fast rule. We fully realize that benefits can seldom be measured and apportioned with any great degree of exactness, but surely they can be apportioned more equitably than has been done in these cases.

Some contention is made in behalf of appellants that a portion of the expense of these improvements should have been assessed against the city. We find nothing in the record that would warrant our interfering with the assessments if that were the only objection made against them. We see no abuse of the commissioners' discretion in that regard.

We conclude that these assessments must be set aside, and the judgments of the court confirming them reversed; and in view of the fact that a new assessment upon a district with different boundaries will be necessary, the superior court is directed to cause the same to be made either by these or other commissioners appointed by it for that purpose.

DUNBAR, C. J., MOUNT, and GOSE, JJ., concur.