[No. 11342.   Department Two.   January 24, 1914.]

*In re* EIGHTH AVENUE NORTHWEST.[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — ASSESSMENT DISTRICTS—POWER TO FIX LIMITS.   The legislature has power to provide, as in Rem. & Bal. Code, § 7790, that a city directing a public improvement may, in the initiatory ordinance, fix the limits of the assessment district, and that the same shall be conclusive on the commissioners; and the action of the city thereunder is legislative in character and beyond the control of the courts.

SAME—BENEFITS—ASSESSMENTS—LIMIT.   The power of the city, under Rem. & Bal. Code, § 7790, to fix the limits of an assessment district does not authorize a levy of the whole cost of the improvement upon the district, regardless of benefits; in view of Const., art. 7, § 9, providing that the city may make local improvements by special assessment of property benefited, and clearly intending to limit the assessments to the amount of the benefits.

SAME— BENEFITS—ASSESSMENTS—APPORTIONMENT—RESTRICTIONS. Under Rem. & Bal. Code, § 7790, providing that no property shall be assessed more than it is actually benefited, and Id., § 7795, providing that if property has been assessed more or less than its proportionate share, the court shall determine the proper amount

[1]Reported in 138 Pac. 10.

and give judgment accordingly, property cannot be assessed in a greater amount than its relative benefit; hence, where the city has fixed an assessment district excluding lands that are benefited, the commissioners must take into consideration the benefit accruing thereto, and charge the lands within the district with only such proportions of the cost as corresponds to their proportion of the benefits, even if the assessment district was actually benefited to the full extent of the cost.

SAME—BENEFITS—ASSESSMENTS—APPORTIONMENT—METHOD. The assessment of lands within an assessment district for the total cost of an improvement, is arbitrary and upon a fundamentally wrong basis, where the commissioners testified that other land outside the district was also benefited, and would have been included in the assessment if it had been included in the district.

SAME —BENEFITS—ASSESSMENTS—EXCESSIVENESS—EVIDENCE—SUFFICIENCY. An assessment for benefits is excessive where lands within the assessment district were assessed in a sum sufficient to cover the entire cost of the improvement, and the commissioners testified that land outside the improvement district was also benefited and would have been assessed for part of the cost if it had been included in the district, and the only other witnesses testified that the property was assessed grossly in excess of the benefits, one of them testifying that it was not benefited at all.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 13, 1913, confirming an assessment roll, after a hearing on the merits. Reversed.

*Buck, Benson & Knutson,* for appellants.

*James E. Bradford* and *C. B. White,* for respondent.

FULLERTON, J.—In 1882, the owners of certain lands, lying in sections 11, 12, and 13, in township 25, north, of range 3, east of the Willamette Meridian, in King county, Washington, caused the same to be platted into a number of 10-acre tracts, and to be recorded on the records of King county as the Farmdale Homestead Tracts. The appellants Bailey, in the year following, purchased one of such tracts, designated on the recorded plat as tract 38 of Farmdale Homesteads. For some reason, not shown in the record, the owners of the remaining tracts later became dissatisfied with the

manner in which the land was platted, and procured a vacation of the plat by the tribunal having jurisdiction in such matters. Still later, they caused the land to be replatted into lots, blocks, streets and alleys of the usual size as an addition to the then city of Ballard, now a part of the city of Seattle. By this replatting the lots, blocks and streets were made to abut upon all sides of the appellants' property.

In January, 1911, the city of Seattle, by ordinance, provided for the extension of the existing streets over the appellants' property. The ordinance directed that the cost of the proceeding should be "paid for by special assessment upon the property specially benefited lying within the limits of Tract No. thirty-eight (38), of the Farmdale Homestead Tracts, in section 12, township 25, north, range 3, East, W. M. ;" and that, "any part of the cost of said improvement that is not finally assessed against the property specially benefited shall be paid from the general fund of the city of Seattle;" the tract of land described being the land owned by the appellants. The ordinance further provided that condemnation proceedings be begun by the corporation counsel of the city of Seattle to acquire the land necessary to be taken for the purposes, and to ascertain the compensation to be paid the owners for the lands so taken. Proceedings looking to that end were accordingly begun in the superior court of King county, and resulted in a judgment of condemnation of the land necessary to be taken for the streets, and an award to the owners by a jury of the sum of $20,935.70. The land taken consisted of a strip 30 feet in width off the west side of the tract; a triangular shaped piece off the south side; a strip 60 feet wide extending through the east side; and two strips each 60 feet in width, extending east and west through the tract; the relative situation being shown in the sketch following. The continuous line shows the boundaries of the appellants' land, and the broken lines, the street extensions and the immediately surrounding territory.

After judgment had been entered on the award of the jury, supplemental proceedings were begun in the superior court to procure an assessment upon the property benefited to pay the judgment, in accordance with the terms of the ordinance directing the improvement to be made. A petition was filed asking a reference of the matter to the eminent domain commissioners, which the court granted, and that body subsequently filed an assessment roll, in which they assessed against the remaining lands of the appellants as one body, without discrimination as to the condition in which it was left, the entire judgment, together with interest on the same amounting to $1,047.66, and the costs of the city expended in the proceedings, consisting of the expenses of the corporation counsel, the city engineer, the county auditor, and the per diem and expenses of the eminent domain commissioners, totaling $451.42, the whole making a grand total of $22,452.38. Ex-

ceptions were taken to the assessment by the appellants and a hearing was had thereon, after which the court entered an order confirming the assessment roll, making the amount of the assessment therein a lien upon the remaining property of the appellants. As the amount levied to satisfy the judgment entered on the verdict of the jury, together with the interest thereon, will ultimately go to the appellants, the net results of the proceedings are that the city has taken for public use practically one-third of the appellants' property, has divided the remainder into five separate tracts, two of which are left in such shape as to be of no practical value, and has taxed to the appellants, making it a lien upon their remaining property, the entire cost of the proceedings, amounting to the sum of $451.42.

The assignments of error made by the appellants can be reduced into two principal questions, namely: first, the validity of that part of the initiatory ordinance limiting the area to be assessed to pay the costs of the improvement, and second, the excessiveness of the levy as made. Noticing these questions, we shall first inquire as to the validity of the ordinance.

The right of a city in an ordinance initiating a public improvement to establish an assessment district which alone shall be assessed to pay the costs of the improvement has the sanction of legislative enactment. Rem. & Bal. Code, § 7790 (P. C. 171 § 75). The section of the statute expressly provides that the legislative body of a city directing a public improvement to be made "may in the ordinance initiating any such improvement establish an assessment district and said district when so established shall be deemed to include all the lands or other property especially benefited by the proposed improvement, and the limits of said district when so fixed shall be binding and conclusive on" the commissioners appointed to make the assessment. That such an enactment is within the power of the legislature is generally held by the courts. It was in effect so held by this court in the cases of *In re*

*Twelfth Avenue,* 66 Wash. 97, 119 Pac. 5; *Spokane v. Curtiss,* 66 Wash. 555, 120 Pac. 70; *Seattle v. McElwain,* 75 Wash. 375, 134 Pac. 1089; and in *In re Leary Avenue, ante* p. 399, 138 Pac. 8. In the first of these cases, the court said there was eminent authority for the position that the legislature not only had such power, but that the acts of a city acting thereunder were so far legislative in character as to be beyond the interference of the courts. To the authorities there cited, might have been added the case of *Spencer v. Merchant,* 100 N. Y. 585, 3 N. E. 682, and the same case where it was taken on writ of error to the Supreme Court of the United States, *Spencer v. Merchant,* 125 U. S. 345; and other cases from the same and other courts therein cited. There might have been added, also, perhaps, the case of *Norwood v. Baker,* 172 U. S. 269, although in this case it was stated that the "power of the legislature in these matters was not unlimited." But without inquiring into the extent of these limitations, we think that, under these authorities, it can be laid down as a general rule that a city, in an ordinance initiating a public improvement, when empowered expressly so to do by the legislature, may fix the boundaries of the district that shall be assessed to pay the costs of the improvements.

It is not to be understood, however, that the city can, even though directly authorized so to do by the legislature, levy the entire costs of the improvement on the district so fixed in the initiatory ordinance, regardless of the question of benefits. This, we think, is prohibited by that clause of the constitution authorizing the legislature to "vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of property benefited." True, there is here no direct prohibition against assessing property benefited by an improvement in excess of the benefits conferred thereby, but such is clearly its evident meaning. Const., art. 7, § 9.

The meaning of the constitutional provision is, however,

not very material to the present inquiry, since the legislature has not attempted to provide for an assessment in disregard of benefits. On the contrary, it has provided, in the very section of the statute empowering cities to establish assessment districts that "no property shall be assessed a greater amount than it will be actually benefited;" and in a subsequent section [Id., § 7795; P. C. 171 § 85] has provided the further limitation to the effect that, if it is made to appear to the court, on the hearing had on objections made to the assessment, that the property of the objector has been assessed "more or less than its proportionate share of the costs of the improvement," the court shall determine the amount in which the property ought to be assessed, and enter judgment accordingly. This latter rule requires that property benefited by a public improvement be assessed in no greater amount than its relative benefit. If, for example, two or more persons severally own tracts of land abutting upon a public improvement, each of which is equally benefited thereby, the city can, by the process of forming an assessment district, confine an assessment to pay the costs of the improvement to one or more of such tracts to the exemption of the others, but it cannot lawfully cause the entire cost to be assessed upon any number of such tracts less than the whole, even though the tracts assessed be benefited in a sum equal to the cost of the improvement. To do so would not only violate the express provisions of the statute above cited, but it would violate that general principle which underlies all assessments, the principle which requires assessments for the public benefit to be distributed with substantial equality over all property of like kind and similarly situated with reference to the subject-matter of the assessment.

Tested by these principles, is the property of the appellants in this instance assessed beyond its just proportion of the costs of the improvement? It seems to us that the record justifies the conclusion that it is palpably and grossly so. We are not unmindful of the rule, heretofore laid down by

us as the controlling rule governing such matters, to the effect that the courts will not disturb the findings of the eminent domain commission unless such commission appears to have acted arbitrarily or has proceeded in making the assessment upon a fundamentally wrong basis; but we think the record shows that it so acted and proceeded in making this assessment. While the commissioners testified that, in their opinion, the remaining lands of the appellant were benefited by the opening of these streets in a sum equal to the value of the land taken, plus the costs incurred in the proceedings had to condemn the property, they also testified that lands other than the appellants' were also benefited, and that they would have distributed the assessment over such other lands but for the fact that the city in the ordinances initiating the proceedings had limited the area to be assessed to the appellants' remaining lands; apparently overlooking entirely a further clause in the initiatory ordinance to the effect that such part of the cost of the improvement as could not be lawfully assessed against the appellants' property should be paid from the general fund of the city. This was both arbitrary action, and proceeding upon a fundamentally wrong basis. The clause in the initiatory ordinance last cited authorized an assessment against the city generally for such proportion of the costs as accrued to the public benefit. In making the assessment, the commissioners should have taken this into consideration, as well as the proportionate share of the costs that should have been borne by the property benefited by the improvement not included in the assessment district, and assessed to the lands in the assessment district such part of the remaining costs as would not exceed the actual benefits conferred on such lands by reason of the improvement.

Again, the eminent domain commissioners are alone in the opinion that the actual benefit conferred on the appellants' property by the improvement equalled the sum assessed upon

it.   The appellants' witnesses (the court limited the number they were permitted to call to three) all testified that the land was assessed greatly in excess of benefits.   Indeed, one of them, who seems to have had a wide experience in such matters, and who was "a fair minded man" according to the endorsement given him by the trial judge from the bench, testified that the property was not benefited at all from the improvement.   The others testified to comparative values, from which it can be deduced that the property was benefited to a certain extent by the improvement, but which, under a most liberal estimate, shows that it was assessed grossly in excess of the actual, and, of course, proportionate benefits.   The witnesses gave the reasons for their conclusions at length, but it is unnecessary to repeat them here.   It is sufficient to say that the record as a whole convinces us that the assessment must be materially reduced.

The problem of the amount of the reduction that ought properly to be made is not easy of solution; but, from the record as a whole, we feel that any assessment greater than one-fourth of that levied upon the lands by the commission would be excessive.   The order of the court will be, therefore, that the judgment confirming the assessment roll be set aside as to these appellants, and the cause remanded to the lower court with instructions to reduce the assessment upon the appellants' property to the sum of $5,613.10, and confirmed in that sum.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.